RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

IMOGENE SHEPHERD, widow of Tramble Shepherd,

*Petitioner*,

*v.*

No. 17-4313

INCOAL, INC.; AMERICAN BUSINESS & MERCANTILE INSURANCE MUTUAL, INC.; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

*Respondents*.

───────────────

On Petition for Review from the Benefits Review Board;
No. 17-0081 BLA.

Argued:  December 5, 2018

Decided and Filed:  February 6, 2019

Before:  DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Petitioner.  Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Respondents Incoal and American Business & Mercantile Insurance.  Jeffrey S. Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  **ON BRIEF:**  Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Petitioner.  Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Respondents Incoal and American Business & Mercantile Insurance.  Jeffrey S. Goldberg, Sean G. Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. More than ten years ago, claimant Imogene Shepherd filed for survivor's benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901–944, contending that her husband, a coal miner, died from respiratory complications exacerbated by exposure to coal dust during his years working in underground coal mines. To date, respondent Incoal, Inc., has continued to challenge that claim, insisting that Tramble Shepherd, the claimant's deceased husband, should not be credited with 15 years of underground coal mine employment, a length of time that would call into play a statutory and regulatory presumption that would justify an award of survivor's benefits to Imogene Shepherd. In its most recent decision in this litigation, the Benefits Review Board (BRB or Board) of the United States Department of Labor agreed with Incoal and denied Shepherd the relief she sought.

Despite the need to resolve this litigation, further factfinding by an administrative law judge is required to ensure that all relevant evidence regarding the propriety of the claim has been considered. We thus grant the petition for review and remand this matter to the administrative agency for further factual findings and determinations.

## FACTUAL AND PROCEDURAL BACKGROUND

Tramble Shepherd (the miner) worked for various coal companies in Kentucky from no later than May 1963 until June 1985. Although Imogene Shepherd (the claimant) later testified under oath that her husband ceased his coal mine employment because "he was having a hard time breathing and he couldn't catch his breath," the miner's 1987 claim for benefits under the BLBA indicated that he had stopped working in or around coal mines due to a back injury he suffered on the job approximately two years prior to his retirement. Indeed, the administrative law judge who first presided over the miner's claim for benefits noted that "[t]he [miner] stated that his breathing problem was one reason for not returning to coal mining but that he quit in 1985, on the advice of his physician, due to a back injury."

In any event, in April 1987, the miner filed with the United States Department of Labor for benefits under the BLBA. An administrative law judge conducted a hearing and concluded that the evidence presented by the miner and by Incoal, Inc.—the last mining company with which the miner was employed for at least one year—supported the stipulation of the parties that the miner "ha[d] 17 years of qualifying coal mine employment." Nevertheless, despite the administrative law judge's conclusion "that the medical evidence established that the Miner suffered from coal workers' pneumoconiosis[, h]e determined . . . that the evidence did not support a finding that the Miner was totally disabled by the disease." Consequently, the administrative law judge denied the claim for benefits, and the miner chose not to appeal that determination.

After the miner's death in July 2008, however, his widow, the claimant, filed with the Department of Labor for survivor's benefits to which she claimed she was entitled. The District Director of the Department's Office of Workers' Compensation Programs agreed that such benefits were appropriate. Incoal appealed that ruling, and an evidentiary hearing on the claim was held before an administrative law judge in August 2011. Because the passage of the Patient Protection and Affordable Care Act (ACA) in 2010 had revived a "rebuttable presumption that a miner's death was due to pneumoconiosis if he was totally disabled by a respiratory or pulmonary impairment and worked for at least 15 years in underground mines (or in substantially similar conditions)," a crucial aspect of the hearing involved the proper way in which to calculate the duration of the miner's coal mine employment. In a 51-page "Decision and Order," the administrative law judge found that the miner "had at least 15.25 years of underground coal mine employment" and thus was entitled to the presumption that his "death was due to pneumoconiosis if [his surviving spouse] can establish with medical evidence that the Miner suffered from a totally disabling respiratory or pulmonary impairment." The administrative law judge then concluded that the claimant met that burden. Because Incoal failed to rebut the

statutory and regulatory presumption, the administrative law judge ordered the company to pay survivor's benefits to the claimant.[1]

As was its prerogative, Incoal then appealed the administrative law judge's decision to the BRB. In its unanimous decision, the Board determined that the administrative law judge both failed to address all relevant evidence regarding the length of the miner's coal mine employment and failed to explain adequately how he calculated the 15.25-year figure that justified application of the 15-year presumption. The Board thus remanded the matter for the required clarifications but specifically stated that "[i]f the administrative law judge finds that claimant has established that the miner had fifteen years of qualifying coal mine employment, he may reinstate his finding that claimant invoked the [15-year] presumption." Furthermore, "[i]n the interest of judicial economy, and to avoid the repetition of any error on remand," the BRB addressed other contentions of error put forth by Incoal and affirmed the administrative law judge's determinations that the company failed to prove that the miner did not suffer from legal pneumoconiosis or "that the miner's death did not arise out of, or in connection with, his coal mine employment." Thus, as expressed by the Board, "if the administrative law judge again finds, on remand, that claimant has invoked the [15-year] presumption, he may reinstate the award of benefits."

On remand, the administrative law judge explained that, when calculating a miner's coal mine employment, he first should determine, if possible, the beginning and ending dates of any such employment. If those dates are not ascertainable, however, "an administrative law judge may use any reasonable means of calculating the length of the claimant's coal mine employment. *Clark v. Barnwell Coal Co.*, 22 B.L.R. 1-275, 1-280, 1-281, BRB Nos. 01-0876 BLA and 02-0280 BLA (Apr. 30, 2003)." For calendar years prior to 1978, the administrative law judge concluded that it would be reasonable to "count[ ] quarters [of years] in which the Miner's Social Security earnings records show that he earned $50.00 or more, while not counting the quarters in which he earned less." Doing so, and discounting any quarters in which the miner worked at

---

[1]Despite the fact that the parties previously had stipulated that the miner had 17 years of coal mine employment, the administrative law judge held that the stipulation no longer was binding on the parties, given the change in the applicable law resulting from passage of the ACA.

jobs that were not related to coal extraction, the administrative law judge calculated that the miner should be credited with 27 quarters, or 6.75 years of coal mine employment prior to 1978.[2]

For years after 1977, the miner's Social Security Earning Statement did not break down his earnings by quarters. Consequently, for those later years, when the evidence in the record was insufficient to establish the beginning and ending dates of any employment, the administrative law judge chose to "credit [the] Miner with a full calendar year of coal mine employment where the Miner's yearly income, as reflected in Social Security earnings records, exceeds the yearly wage base as reported by Exhibit 609 of the Office of Workers' Compensation Programs Coal Mine Procedure Manual, Wage Base History ('Exhibit 609')." When the evidence indicated that the miner was employed for less than the entire calendar year, however, the administrative law judge divided the miner's "yearly income from coal mine employment by 'the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics.' § 725.101(a)(32)(iii); *see* Exhibit 10 of the *Office of Workers' Compensation Programs Coal Mine Procedure Manual, Average Earnings of Employees in Coal Mining* (Apr. 2012) ('Exhibit 610')." (Other citations and footnote omitted.) In applying that computational framework, the administrative law judge attributed an additional 6.33 years of coal mine employment to the miner for the years 1978–1985. Combined with the 6.75 years of coal mine employment that the administrative law judge found should be credited to the miner, the administrative law judge determined "that the Miner worked in coal mine employment for a total of 13.08 years."

Because that figure fell short of the 15 years of coal mine employment that would justify application of the presumption applied in his earlier decision, the administrative law judge noted that the claimant bore "the burden of proving that the miner had pneumoconiosis that arose out of coal mine employment, and that his death was due to pneumoconiosis." (Quotation marks and footnote omitted.) An analysis of medical evidence and opinions regarding the miner's health and the effect that exposure to coal dust during coal mine employment might have had on it did

---

[2]In making the calculation of quarters worked by the miner in coal mine employment prior to 1978, the administrative law judge apparently failed to account for one quarter of such work in 1966 and another quarter in 1967. Consequently, a proper calculation of the quarters worked in coal mine employment in which the miner earned at least $50.00 could have yielded a sum of 29 quarters, or 7.25 years.

not convince the administrative law judge that the miner suffered from pneumoconiosis, that any pulmonary conditions from which the miner suffered arose from his coal mine employment, or that the miner's death was due to pneumoconiosis. Accordingly, the administrative law judge determined that the claimant was not entitled to survivor's benefits.

The claimant filed a timely motion for reconsideration, arguing that additional qualifying quarters of coal mine employment should have been credited to the miner for his pre-1978 work and that the administrative law judge should have used "Exhibit 610 of the Office of Workers' Compensation Programs Coal Mine Procedure Manual, Wage Base History instead of Exhibit 609 to compare the Miner's actual earnings to the earnings he would be expected to make if he worked a full year." Applying the formulas suggested by the claimant, the administrative law judge recalculated the miner's years of coal mine employment and determined that the miner should have been credited with a total of 15.07 years of such work. Because the 15-year presumption of total disability due to pneumoconiosis once again was determined to be applicable, and because the BRB previously had held that "if the administrative law judge again finds, on remand, that claimant has invoked the [15-year] presumption, he may reinstate the award of benefits," the administrative law judge ordered Incoal to "pay the Claimant all benefits to which she is entitled."

Again finding itself liable for payment of benefits to the miner's widow, Incoal petitioned the BRB for further review of the administrative law judge's decision. Among the allegations of error raised by Incoal were claims that the administrative law judge accorded too much credit for the miner's employment in calendar years 1963, 1964, and 1973. In each of those years, argued Incoal, the administrative law judge credited the miner with full quarters of work when the miner's own listings of his dates of employment indicated that he had not worked for each of the three months in the contested quarters. The BRB agreed with Incoal that the miner could not be credited with a full quarter of coal mine employment when other evidence indicated that less time had been spent in qualified mine work. For example, the BRB noted:

> The miner indicated that he worked for Allen Fork [Coal Company] from May of 1963 to July of 1963, and for Expert Coal from August of 1963 to November of 1964. Consequently, the miner's self-reported and uncontradicted employment history reveals that he was not engaged in coal mine employment during the first

four months of 1963 or the last month of 1964. Thus, the miner was entitled to, at most, nineteen months (1.59 years) of coal mine employment from 1963 through 1964. Consequently, we hold that the administrative law judge, by crediting the miner with 1.75 years of coal mine employment during this period, overestimated the length of the miner's coal mine employment by 0.16 of a year.

(Citations and footnotes omitted.)

Similarly, the administrative law judge credited the miner with 0.50 of a year for his coal mine employment in 1973 because the miner earned more than $50.00 in both the third and fourth quarters of that year. However, the miner's own records indicated that he was not engaged in coal mine employment until September 1973, meaning that he "was entitled to, at most, 0.34 of a year of coal mine employment in 1973." That 0.16 overage, in conjunction with the 0.16 overage from the 1963–1964 years, meant that the administrative law judge credited the miner with 0.32 years of coal mine employment that was unearned. Deducting 0.32 years from the 15.07 years of coal mine employment found by the administrative law judge meant that the miner had accumulated only 14.75 years of coal mine employment, three months less than necessary to justify application of the 15-year presumption that the miner died from pneumoconiosis brought on by exposure to coal dust during coal mine employment. Because the claimant had not challenged the earlier finding by the administrative law judge that, absent that presumption, she could not establish that the miner suffered from pneumoconiosis or that his death was due to that condition, the award of benefits was reversed. The claimant now petitions for review of that decision.

## DISCUSSION

**Standard of Review**

When addressing a petition for review in a black-lung-benefits case, we review the *legal* conclusions of the Benefits Review Board *de novo*. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). Even so, "our review actually focuses on whether the ALJ's decision is supported by substantial evidence." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013). In other words, "[r]eview on appeal should be focused on whether the ALJ—not the Board—had substantial evidence upon which to base his or her decision."

*Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997) (citation omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). To satisfy the substantial-evidence standard, the administrative law judge must explain adequately "the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011). The reviewing court may not reweigh the evidence, substitute its judgment for that of the administrative law judge, or reverse the administrative law judge's decision simply because "we would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985).

**Framework of the Black Lung Benefits Act**

In 1969, noting the "significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines," Congress enacted the Black Lung Benefits Act in an effort to combat that health crisis. 30 U.S.C. § 901(a). To do so, the Act proposed "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." *Id.*

The Act, and the regulations promulgated pursuant to it, define "pneumoconiosis" as "a chronic disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. §§ 718.201(a) and 725.101(a)(25). "This definition includes both medical, or 'clinical', pneumoconiosis and statutory, or 'legal', pneumoconiosis." 20 C.F.R. § 718.201(a). The regulations further define "clinical pneumoconiosis" as "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). "Legal pneumoconiosis," however, has a much broader definition, including, but "not limited to, any chronic restrictive or obstructive pulmonary disease" "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R.

§ 718.201(a)(2) and (b). Thus, the surviving spouse of a miner shall be entitled to benefits under the Act if the survivor can establish that the deceased spouse was a miner who suffered from a chronic pulmonary disease that was aggravated by coal dust exposure that arose out of coal mine employment and that contributed to the miner's total disability or death. *See* 20 C.F.R. §§ 725.201(a)(2) and 725.202(d).

The burden placed upon disabled miners and the survivors of deceased miners to establish entitlement to black lung benefits was lessened somewhat with the enactment of the ACA in 2010. As part of that sweeping legislation, Congress reinstated within the BLBA what is known as the "15-year presumption."[3] In relevant part, that presumption states:

> [I]f a miner was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.

30 U.S.C. § 921(c)(4).

The regulations promulgated by the Office of Workers' Compensation Programs of the United States Department of Labor echo those provisions. For claims (like the one at issue here) that were filed after January 1, 2005, and were pending on or after March 23, 2010, 20 C.F.R. § 718.305 authorizes application of a rebuttable presumption that a miner's death was due to pneumoconiosis if a surviving spouse can establish, in the absence of a chest x-ray showing that the miner suffered from *clinical* pneumoconiosis, that:

> The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

* * *

---

[3]"The presumption was first added to the BLBA in 1972. In 1981, Congress eliminated the presumption. Congress reinstated the presumption in 2010, making it retroactive to claims filed after January 1, 2005 that were pending on or after March 23, 2010." *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 662 (6th Cir. 2015) (citations omitted).

The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment.

20 C.F.R. § 718.305(b). "The conditions in a mine other than an underground mine will be considered 'substantially similar' to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there." 20 C.F.R. § 718.305(b)(2).

Once invoked, the 15-year presumption may be rebutted "only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." *Id.* As conceded by Incoal in its appellate brief, once the 15-year presumption is invoked, requiring a "claim defendant to disprove the existence of pneumoconiosis, either clinical or legal, or to disprove that pneumoconiosis influenced the miner's death in any way, [is] a difficult if not impossible burden."

**Calculation of the Duration of the Miner's Coal Mine Employment**

Certain elements of Imogene Shepherd's claim for survivor's benefits under the BLBA are *not* disputed at this stage of the litigation. For example, the parties agree that the claimant properly may seek payment of benefits as her husband's survivor and that the miner was employed for much of his working life as a coal miner. Furthermore, neither party contests that any coal mine employment with which the miner should be credited was either in underground mines or in mines "substantially similar" to underground mines. Nor do the parties contest the fact that chest x-rays taken of the miner prior to his death failed to show signs of clinical pneumoconiosis. The parties agree that the miner suffered from, and was disabled by, chronic obstructive pulmonary disease (COPD), but disagree about the cause. Despite that disagreement, Incoal again recognizes that if the 15-year presumption is applicable, the coal company cannot overcome the medical evidence linking the miner's exposure to coal dust over the years to his COPD and, ultimately to his death.

Thus, at its essence, this appeal is a dispute over whether the miner accumulated 15 years of creditable underground coal mine employment before his death. A resolution of that dispute

necessarily leads back to the applicable regulations and an interpretation of the term "year" as it is used in the regulations.

In 20 C.F.R. § 725.101(a)(32), the Department of Labor defines "year" as "a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 working days."  Despite that seemingly straight-forward definition, the regulation itself contains plain language offering alternative methods of determining the duration of a miner's coal mine employment:

> (i)  If the evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act.  If a miner worked fewer than 125 working days in a year, he or she has worked a fractional year based on the ratio of the actual number of days worked to 125.  Proof that the miner worked more than 125 working days in a calendar year or partial periods totaling a year, does not establish more than one year.

> (ii)  To the extent the evidence permits, the beginning and ending dates of all periods of coal mine employment must be ascertained.  The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony.  If the evidence establishes that the miner's employment lasted for a calendar year or partial periods totaling a 365-day period amounting to one year, it must be presumed, in the absence of evidence to the contrary, that the miner spent at least 125 working days in such employment.

> (iii)  If the evidence is insufficient to establish the beginning and ending dates of the miner's coal mine employment, or the miner's employment lasted less than a calendar year, then the adjudication officer may use the following formula: divide the miner's yearly income from work as a miner by the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS).  A copy of the BLS table must be made a part of the record if the adjudication officer uses this method to establish the length of the miner's work history.

20 C.F.R. § 725.101(a)(32)(i)–(iii).

The Director of the Office of Workers' Compensation Programs and Incoal read this regulation to require, *in all instances*, that the miner be employed by a coal mining company for a full calendar year *and* that the miner work for at least 125 days in the mines during that 365- or

366-day period. According to the respondents, therefore, absent proof that a miner was employed by a coal mining company for a full calendar year, that miner never can claim a full year of coal mine employment.

Ordinarily, we "give substantial deference to an agency's interpretations of its own regulations unless the interpretation is plainly erroneous or inconsistent with the published regulations." *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 619 (6th Cir. 2012) (internal quotation marks and citation omitted). Here, such deference need not be accorded because the Director's (and Incoal's) reading of 20 C.F.R. § 725.101(a)(32) ignores the clear language of the regulation. In fact, rather than limiting the manner in which years of coal mine employment can be calculated, the regulation sets out four alternate ways in which a claimant can establish requisite periods of coal mine employment.

First, if the miner was employed by a coal mining company for 365 (or 366 days if one day is February 29) *and* the miner worked for at least 125 days in or around a coal mine, the miner clearly established one year of coal mine employment. 20 C.F.R. § 725.101(a)(32).

Second, if the miner worked at least 125 days in or around coal mines, it will be presumed that the miner "has worked one year in coal mine employment for all purposes under the Act." 20 C.F.R. § 725.101(a)(32)(i). Consequently, under subsection (i), regardless of how long the miner actually was employed by the mining company in any one calendar year or partial periods totaling one year, if the miner worked for at least 125 days, the miner will be credited with one year of coal mine employment.

Third, if the beginning and ending dates of a miner's employment with a mining company can be determined, and if that evidence shows that the miner was employed by the mining company for one calendar year or partial periods totaling a 365- or 366-day year, it will be presumed, absent evidence to the contrary, that the miner worked in or around the mines for at least 125 days. 20 C.F.R. § 725.101(a)(32)(ii). Thus, in many cases, simply being in the employ of a mining company for a calendar year is sufficient to qualify the miner for one year of coal mine employment.

Fourth, if the beginning and ending dates of the miner's employment cannot be determined *or*— even if such dates are ascertainable—if the miner was employed by the mining company for "less than a calendar year," the adjudicator may determine the length of coal mine employment by dividing the miner's yearly income from coal mine employment by the average daily earnings of an employee in the coal mining industry. If the quotient from that calculation yields at least 125 working days, the miner can be credited with a year of coal mine employment, regardless of the actual duration of employment for the year. 20 C.F.R. § 725.101(a)(32)(iii). If the calculation shows that the miner worked fewer than 125 days in the calendar year, the miner still can be credited with a fractional portion of a year based on the ratio of the days worked to 125. 20 C.F.R. § 725.101(a)(32)(i).

Despite § 725.101(a)(32)'s unambiguous nature, the respondents rely on the prefatory language in 20 C.F.R. § 725.101(a)(32) that defines a "year" as 365 or 366 consecutive days, as well as the directive in 20 C.F.R. § 725.101(a)(32)(ii) to ascertain the beginning and ending dates of any coal mine employment, "[t]o the extent the evidence permits." In reading those two provisions, the Director and Incoal conclude hyperbolically that "[t]here would be little point in ascertaining the specific dates if 125 working days always established a year of coal mine employment," Director's Br. at 21, and that crediting a miner with one year of coal mine employment upon proof that the miner worked only 125 days within a calendar year would "redefine time," Incoal's Br. at 14-18. Those arguments, however, misread both the underlying intent of the BLBA and the clear language of the applicable regulations in numerous regards.

First, "[t]his court has often repeated that the [BLBA] is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions." *Adams v. Dir., Office of Workers' Comp. Programs*, 886 F.2d 818, 825 (6th Cir. 1989) (citations omitted). The efforts of the Director and Incoal to have this court read the language of the regulations narrowly in an effort to limit the number of miners and miners' survivors eligible for benefits runs counter to that mandate.

Second, just because the preamble to § 725.101—found in the Federal Register at Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79959-60 (Dec. 20, 2000)—provides that "in order to have one year of coal

mine employment, the regulation contemplates an employment relationship totaling 365 days, within which 125 days were spent working and being exposed to coal mine dust," does not mean that the only way to establish a year of coal mine employment is by proving both that the miner was employed by a mining company for 365 consecutive days *and* that the miner spent 125 of those days working in or around a coal mine. For one, because the plain language of the regulation unambiguously permits a one-year employment finding without a 365-day requirement, we cannot consult the preamble. *See*, *e.g.*, *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1044 (6th Cir. 2018). For another, to assign any other meaning to the provisions—such as accepting the interpretations of the Director and Incoal—would, for example, read out of the regulation § 725.101(a)(32)(i)'s recognition that working 125 days in or around a coal mine within a calendar year will count as a year of coal mine employment "for all purposes under the [BLBA]."

Third, the respondents misread the significance of the provision in § 725.101(a)(32)(ii) that directs that the beginning and ending dates of a miner's employment be ascertained. The Director argues that "[t]here would be little point in ascertaining the specific dates if 125 working days always established a year of coal mine employment." Director's Br. at 21. Incoal similarly contends "that where the record contains proof of the beginning and ending dates of employment, resort to calculating whether the claimant worked for 125 days in a year is not permitted." Incoal's Br. at 17. Clearly, determining that a miner has worked for a mining company for *any* combined period of 125 days will not establish a year of coal mine employment. Instead, what § 725.101(a)(32)(ii) purports to do is to have an administrative law judge first ascertain, if possible, the beginning and end dates of coal mine employment. If the miner's employment with a mining company indeed did last for 365 consecutive days, it must be presumed, unless the evidence proves otherwise, that the miner has accumulated the necessary 125 days of coal mine employment and should be credited with one year of such employment for purposes of establishing entitlement to benefits. In other words, the direction to determine the exact dates of employment should not be read as an effort to *restrict* the ability of a miner or a miner's survivor to recover black lung benefits, but rather an effort to *make it easier* to prove entitlement to such payments.

Fourth, to accept the argument of the Director and Incoal that, in order to be credited with one year of coal mine employment, a miner must be on the payroll of a mining company for 365 consecutive days and have worked 125 of those days in or around a coal mine effectively would read out of § 725.101(a)(32) the provisions of subsection (iii) of that regulation. Such elision is not allowed because any interpretation of a statute or regulation must, if possible, give effect to every provision of the legislation or guidance. *See, e.g.*, *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 895 (6th Cir. 2016) ("[a] court should give effect to all words and phrases in the text at issue"). The plain language of subsection (iii) applies not only when the beginning and ending dates of a miner's employment cannot be ascertained, but also, even if such evidence is available, if "the miner's employment lasted less than a calendar year." Thus, contrary to the positions espoused by the respondents, the regulation expressly provides that even if a miner cannot show that he or she was employed by a mining company for a calendar year, he or she still can be credited with a year of coal mine employment, or a fraction of a year of such employment, if the calculation outlined in subsection (iii) so establishes.

Indeed, we recently recognized:

> [A] miner is entitled to credit for one year of coal mining employment if he worked "in or around a coal mine" for at least 125 "working days" during the year. *See* C.F.R. § 725.101(32). Under the regulations, [a miner] may be entitled to credit for 15 years of coal mining employment even though he worked for less than 15 actual years in an underground coal mine.

*Barnett v. Tenn. Consol. Coal Co.*, No. 16-3983, slip op. at 5 (6th Cir. July 14, 2017) (order). Although *Barnett* is an unpublished order, and thus is not controlling authority, *see, e.g.*, *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001), the quoted portion of the decision is in accord with the express language of the relevant regulatory provision and is, therefore, persuasive authority when examining the contrary conclusion of the BRB in this case.

Not surprisingly, both the Director and Incoal attempt to undermine even the persuasive value of *Barnett*. The Solicitor of Labor argues in the appellate brief on behalf of the Director:

> And *Barnett*'s persuasive value is limited. It does not discuss the regulatory calendar-year requirement. Moreover, the issue was not presented to the *Barnett* panel in an adversarial context. The Director did not participate in that case, and both our files and PACER's online record indicate that the employer did not file a

> response brief.  The language in *Barnett* that Mrs. Shepherd relies on is therefore not a considered rejection of the regulatory calendar-year requirement.  It does not trump the plain language of the regulation.

Director's Br. at 20-21.  The Director's arguments fail to cast doubt on the persuasive value of the *Barnett* panel's discussion of § 725.101(a)(32), however.  Although the *Barnett* opinion did not discuss the "calendar-year requirement" in depth, the panel did consider and reject the application of that provision to Barnett's claim.  In fact, the panel specifically noted that the administrative law judge in *Barnett* erroneously "reached his determination that Barnett does not have 15 years of coal mining employment through 'simple mathematics'—i.e., Barnett's coal mining employment from April 1964 to March 1979 did not equal exactly 15 years."  *Barnett*, slip op. at 5.  Such a recognition necessarily entailed an evaluation of the applicability of § 725.101(a)(32)'s initial pronouncement that "[*y*]*ear* means a period of one calendar year."

Furthermore, the fact that the Director and the employer did not choose to contest Barnett's assertions on appeal does not indicate that the process was not adversarial.  The administrative proceedings resulted in a decision in favor of the employer, and both the Director and the employer were apprised of Barnett's petition for review in this court.  In fact, both the Department of Labor attorney and the Department's counsel for appellate litigation filed appearances on behalf of the Director in *Barnett*.  The fact that the Director later chose not to file a responsive brief, and that Barnett's employer affirmatively chose not to file an appearance or participate in the case, if anything, speaks to a recognition that Barnett's arguments in favor of receipt of benefits were meritorious.

Finally, for the reasons previously discussed, the Director's argument that "the plain language of the regulation" disproves the claimant's assertion that a miner is entitled to invoke the 15-year presumption by establishing 125 "working days" of coal mine employment with 15 different 365-day periods is baffling.  Indeed, it is the very language of the various subsections of § 725.101(a)(32) that permit the calculations to which the Director now objects.

Incoal's attacks on the validity of the principle recognized in *Barnett* are of even more questionable validity.  The company suggests that *Barnett* is not persuasive authority because the administrative law judge in that matter "overlooked that all of the parties stipulated that Barnett

worked as a miner for fifteen years and that pursuant to 20 C.F.R. § 725.101(a)(32), he could be credited for fifteen years of coal mine employment even if he worked less than fifteen years." Incoal's Br. at 16. Of course, parties to a dispute cannot stipulate to legal conclusions. *See, e.g.*, *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). In any event, the prior panel of this court did not rely on any stipulation regarding an interpretation of regulation at issue. Instead, the court conducted its own analysis of the provisions and concluded that Barnett's claim for benefits was meritorious because spending 125 dates in a 365-day period in and around coal mines could constitute a year of coal mine employment.

Even more puzzling, Incoal chides the claimant for relying upon an unpublished, but *in-circuit* decision that dealt directly with the issue of attributable coal mine employment. All the while, the coal company itself relies upon a decision from *the Fourth Circuit*, an opinion with even less persuasive appeal than *Barnett*. Not only did that out-of-circuit decision, *Daniels Co. v. Mitchell*, 479 F.3d 321 (4th Cir. 2007), address a dispute over timing to determine whether a company was the responsible coal mine operator, but the Fourth Circuit specifically noted that, "[b]y its terms, [20 C.F.R. § 725.101(a)(32)(iii)] may be used in situations where *the miner's employment lasted less than one year*." *Id.* at 335 (emphasis added). Moreover, other factors in *Mitchell* justified abstaining from using the subsection (iii) calculation to establish the length of the miner's work history in that case. Specifically, the administrative law judge failed to attach the Bureau of Labor Statistics table as required in subsection (iii), failed to explain the calculations made, and failed to take into account uncontroverted evidence that Mitchell was paid "inflated overtime rates"—a fact that would overestimate the days worked in or around a coal mine. *Id.* Incoal's reliance on *Mitchell* thus does nothing to advance the coal company's position in this matter.

As detailed previously, the administrative law judge used two different methods to determine the length of the miner's creditable coal mine employment in this case. For the years between 1963 and 1977, the administrative law judge credited the miner with a quarter-year of coal mine employment for each calendar quarter in which the miner earned at least $50.00 from mining. For the years from 1978 until 1985, however, the administrative law judge examined the miner's gross earnings for each year and compared them to the average annual hourly wage for

coal miners across the United States. If that comparison indicated that the miner had worked for more than 125 days in any calendar year, the miner was credited with one year of coal mine employment. If the calculation showed that the miner worked less than 125 days, the administrative law judge determined the fractional part of the year worked in coal mine employment by dividing the credited days by 125. Using that bifurcated analytical framework, the administrative law judge determined that the miner should be credited with 15.07 years of coal mine employment. However, based on information provided by the miner himself that he had not worked all three months of certain quarters, the BRB recalculated the time worked in coal mine employment and concluded that the miner could claim only 14.75 years of coal mine employment with the various coal mining companies with which the miner had been employed prior to his retirement.

Despite a lack of reference in the applicable regulations to calculating coal mine employment by counting quarters of a year in which a miner earned at least $50.00 from mining operations, the BRB previously has found such a method of computation to be reasonable. *See Tackett v. Dir., Office of Workers' Comp. Programs*, 6 B.L.R. 1-839, 1-841 n.2 (Benefits Rev. Bd. Jan. 20, 1984); *Combs v. Dir., Office of Workers' Comp. Programs*, 2 B.L.R. 1-904, 1-906 (Benefits Rev. Bd. May 16, 1980).[4] That is so even though earning only $50.00 in a quarter-year averages out to a monthly gross pay of $16.67. Clearly, then, as quarterly income approaches that floor of $50.00, it seems reasonable to conclude that the miner did not work in the mines most days in the quarter.

Prior to December 20, 2000, nothing in the applicable regulations precluded administrative reliance on the $50.00/quarter method when calculating the duration of a miner's coal mine employment, regardless of the actual dates of a miner's tenure with an employer. With the promulgation of 20 C.F.R. § 725.101(a)(32), however, a factfinder is required, if possible, to ascertain the beginning and ending dates of any such employment. If such an inquiry leads to a recognition that the miner was not employed by a coal mining company for a full calendar quarter, the previously applicable quarter method cannot be used. Moreover, even

---

[4]In *Combs*, the BRB noted that this method of calculating the length of employment was borrowed from regulations of the Social Security Administration. *Combs*, 2 B.L.R. at 1-906.

though 20 C.F.R. § 725.101(a)(32)(ii) was not effective until January 19, 2001, the provisions of that section expressly apply to all claims filed after that date, regardless of the years of coal mine employment under consideration. *See* 20 C.F.R. § 725.2(c).

Discounting the months that the miner himself indicated he had not worked in the coal mines, the BRB determined that Tramble Shepherd could be credited with only 14.75 years of underground mining employment. In her claim for survivor's benefits, however, the miner's widow offered a different recollection of her late-husband's coal mine employment. Her claim form, certified to be true and correct to the best of her knowledge and belief, and prepared with an awareness that willfully made false or misleading statements *shall be* punished by a fine, imprisonment, or both, indicated that the miner worked for coal mining companies for additional periods of time.

Despite the requirement in administrative hearings that all evidence be considered before a decision is rendered, neither the administrative law judge nor the BRB discussed the weight to be given to the evidence put forth by Imogene Shepherd. Crediting that evidence, however, even without reference to information offered by the miner himself, would lead to a finding that the miner was employed for *more than* the 15 years needed to invoke the rebuttable presumption of 30 U.S.C. § 921(c)(4).

Although the BRB cavalierly referred to the miner's reports of his employment history in 1963, 1964, and 1973 as "uncontradicted," the claim form for survivor's benefits filed by Imogene Shepherd listed different lengths of employment for her husband than did the miner's earlier claim form. Specifically, the miner indicated that his first employment in the coal mining industry was with Allen Fork Coal Company in May 1963. His widow, however, in her claim for survivor's benefits, asserted that the miner began working for Hueysville Coal Company in July 1962, a full ten months prior to the date on which both the administrative law judge and the BRB began counting the miner's employment in the coal industry. Furthermore, in his claim for benefits, the miner indicated that he was not employed by a mining company between September 1967 and September 1973. The claimant nevertheless stated that the miner began his work with Hite Preparation Company in May 1971, 32 months earlier than the date indicated by the miner. Clearly, if the claimant's recollection of her late-husband's mining employment is given

credence, those 42 additional months of coal mine employment would be sufficient to justify invocation of the 15-year presumption.**5**

Consequently, before any definitive determination can be made regarding the duration of the miner's coal mine employment, this matter must be remanded to the administrative law judge to consider and weigh, in the first instance, *all evidence* related to the beginning and ending dates of each of the miner's stints of coal mine employment, including the evidence submitted by Imogene Shepherd—evidence that the administrative law judge and BRB failed to discuss. *See* 20 C.F.R. § 802.301(a). Her claims of her deceased husband's coal mine employment can be supported by earnings statements, pay stubs, specific remembrances, or other indicia of reliability. Only after such an evaluation of relevant, creditable evidence is completed should the administrative law judge determine whether the miner accumulated the 15 years of coal mine employment necessary to invoke the rebuttable presumption of 30 U.S.C. § 921(c)(4). In doing so, the administrative law judge should give effect to all provisions and options set forth in 20 C.F.R. § 725.101(a)(32), not just the regulation's prefatory language.**6**

---

**5**Also noteworthy is the claimant's account of her deceased husband's coal mine employment that shows no such employment after October 1984. Evidence in the record offered by the miner himself, by Incoal, and by Trojan Mining, Inc., however, indicates that the miner worked sporadically in the coal mines in November and December of 1984 and at other times between February and June of 1985. Those additional months of coal mine employment could add to the creditable years of the miner's coal mine employment.

**6**In her appellate brief, the claimant makes much of the fact that the BRB cited in its final decision the Sixth Circuit case of *Aberry Coal, Inc. v. Fleming (Aberry I)*, 843 F.3d 219 (6th Cir. 2016), a decision that later was amended on rehearing in *Aberry Coal, Inc. v. Fleming (Aberry II)*, 847 F.3d 310 (6th Cir. 2017). In *Aberry I*, this court determined that the administrative decision-maker had erred in crediting a miner with 15 years of coal mine employment both by double-counting two years of employment and by giving the miner credit for two additional full years of coal mine employment when the miner had worked for less than 12 months in each of those years. In *Aberry II*, the court focused on the double-counting only and did not discuss the validity or invalidity of counting less than a full calendar year of mining as a year of coal mine employment. The claimant in this case thus reads *Aberry II* as disagreeing with the *Aberry I* finding that only 12 full months of employment can count as a year of coal mine employment for purposes of the 15-year presumption.

Clearly, however, no such implied holding can be read into *Aberry II*, especially when an independent, sufficient ground for the court's decision was relied upon and discussed. In any event, the issue not discussed in *Aberry II* ultimately can be resolved in this case by reference to the language in all subsections of 20 C.F.R. § 725.101(a)(32).

**CONCLUSION**

Both the administrative law judge and the BRB failed to examine all evidence in the record when determining the duration of the miner's coal mine employment. Consequently, we GRANT the claimant's petition to review and REMAND the matter for appropriate consideration of *all* relevant evidence relating to the time spent by the miner working in underground coal mines.