**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11260

————————————

JEFFREY HAYES,

*Petitioner,*

*versus*

DIRECTOR, OWCP,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents,*

COWIN & COMPANY, INC.,

*Intervenor.*

————————————

Petition for Review of a Decision of the
Benefits Review Board
Agency No. 2023-brb-0287-BLA

————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU and TJOFLAT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to interpret a regulation that defines a "year" under the Black Lung Benefits Act. Ermine Hayes worked for Cowin & Company for nearly 30 years, often in coal mines constructing mine shafts and exposed to coal dust. Long after his employment, he filed for benefits under the Act. He alleged total disability from pneumoconiosis or "black lung disease" caused by his work in the coal mines. To obtain benefits, he relied on a regulation creating a presumption that claimants suffer from pneumoconiosis when they have a disabling breathing impairment and were employed for fifteen years in coal mines. A separate regulation defines a year. The Benefits Review Board interpreted that regulation to require a claimant to prove that he was engaged in coal mine employment for a 365/366-day period *and* that 125 of those days were spent working. Under that interpretation, an administrative law judge denied Hayes benefits. Because the plain text of the regulation requires the claimant to prove only that he worked for 125 days in coal mines during a calendar year, we vacate and remand.

## I.  BACKGROUND

Cowin & Company employed Ermine Hayes as a construction worker from 1955 to 1986. Ermine intermittently worked underground in various mines constructing mine shafts. By the end of those shifts, he "would be covered with coal dust." But not all his time working for Cowin & Company was spent in coal mines.

In January 2015, Ermine filed a claim with the Office of Workers' Compensation Programs against Cowin & Company for benefits under the Black Lung Benefits Act. An administrative law

judge initially granted Ermine benefits under the Act. The judge determined that "the record support[ed] 15 years of coal mine employment" and that Ermine was "totally disabled due to a respiratory or pulmonary condition." So he was "entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis." To calculate how long Ermine engaged in coal mine employment, the judge applied the formula provided by a regulation, 20 C.F.R. § 725.101(a)(32)(iii), and found that Ermine identified 15 years "in which he worked for the entire year, *or* in excess of 125 days in coal mine employment." Finally, the judge ruled that Cowin & Company "failed . . . to rebut the presumption" under section 718.305. Ermine died in February 2019. His wife, Wynona, continued his case for benefits as his surviving spouse.

Cowin & Company appealed to the Benefits Review Board. The Board vacated in part and remanded with instructions to recalculate the length of Ermine's coal mine employment. Specifically, the Board did not find "substantial evidence [that] support[ed] the administrative law judge's finding that the discrepancies concerning [Ermine's] length of coal mine employment made it necessary to apply the [section 725.101(a)(32)(iii)] formula." But the Board affirmed the ruling that Cowin & Company failed to rebut the presumption under section 718.305 if it applied.

On remand, the judge again awarded Ermine benefits. The judge acknowledged that not all the time Ermine worked for Cowin & Company was "coal mine employment." Cowin & Company offered evidence that, for parts of his employment, Ermine

was "not *regularly* exposed to coal mine dust . . . in or around a coal mine or coal preparation facility." In any event, the judge found that Ermine worked for six "full calendar years for [Cowin & Company] in qualifying coal mine employment." And he found that Ermine worked in "qualifying coal mine employment" for "partial periods totaling one year, during which he worked in or around a coal mine . . . for at least 125 working days," for another 11.55 years. To arrive at the latter finding, the judge applied the formula of section 725.101(a)(32)(iii) where the record established that Ermine's "employment in or around coal mines lasted less than a calendar year." Where Ermine's "earnings exceed[ed] the industry average for 125 days, he [was] credited with one year of coal mine employment." But where his earnings were "less than the industry average," the judge "divide[d] his earnings by the industry average for 125 days to credit him with a portion of a year." Six years plus 11.55 years equals 17.55 years—sufficient time to entitle Ermine to the section 718.305 presumption which the Board had confirmed had not been rebutted.

Cowin & Company again appealed Ermine's award to the Board, which again vacated it. The Board recognized that the judge used the approach from the decision in *Shepherd v. Incoal, Inc.*, 915 F.3d 392, 405–06 (6th Cir. 2019). The judge "credited [Ermine] with a year of coal mine employment where his earnings indicated that he worked for at least 125 days in a year." The Board ruled that the judge erred because "the Eleventh Circuit has not adopted the Sixth Circuit's view that 125 working days equals one calendar year of coal mine employment." Instead, the Board ruled that the judge

should have "first determine[d] whether [Ermine] engaged in coal mine employment for a period of one calendar year, or partial periods totaling one year." Only after concluding that requirement was satisfied should the judge "determine whether [Ermine] worked for at least 125 working days *within* that one-year period." The Board instructed the judge to make this two-step inquiry on remand. It also instructed the administrative law judge to consider whether Ermine's coal mine employment "beginning and ending dates . . . could be ascertained," without regard to "average earnings statistics" under the formula of section 725.101(a)(32)(iii). Between the Board's decision and remand, Wynona died, so her and Ermine's son, Jeffrey Hayes, pursued the claim.

On remand, a new administrative law judge denied Hayes benefits. The judge acknowledged the Board's instructions to "first determine whether [Ermine] engaged in coal mine employment for a period of one calendar year, or partial periods totaling one year," before determining whether he "worked for at least 125 working days within that one-year period." As an initial matter, the judge acknowledged that the Board affirmed that Ermine worked at least 6.58 years of "qualifying coal mine employment." So, to trigger the presumption, Hayes needed to establish another 8.42 years. Based on Cowin & Company's records of the dates and locations of Ermine's employment and letters written by Ermine, the judge found that Ermine worked another 7.18 years of coal mine employment—placing him at 13.76 years, ineligible for the presumption provided by section 921(c)(4). Without a presumption of disabling pneumoconiosis, the judge concluded that Ermine did

not "suffer[] from legal pneumoconiosis" and denied Hayes benefits under the Act. The Board affirmed the judge's finding of 13.76 years of coal mine employment.

Hayes petitioned this Court for review of the final order affirming the denial of benefits and "all rulings and orders underlying" the final order. We allowed Cowin & Company to intervene in the appeal.

## II. STANDARDS OF REVIEW

We review decisions of the Benefits Review Board *de novo*. *U.S. Steel Mining Co. v. Director, OWCP*, 386 F.3d 977, 984 (11th Cir. 2004). We review the decision of the administrative law judge "only as to whether [it is] in accordance with law and supported by substantial evidence in light of the entire record." *Id*. We review *de novo* the administrative "interpretation[] of the regulations implementing the Act," *Black Diamond Coal Mining Co. v. Director, OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996), but we "defer[] to agencies' reasonable readings of genuinely ambiguous regulations." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019).

## III. DISCUSSION

In 1969, Congress enacted the Black Lung Benefits Act to "provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." Pub. L. 91-173, § 401, 83 Stat. 742, 792 (1969) (codified at 30 U.S.C. § 901(a)). Pneumoconiosis or "black lung disease" is a "chronic dust disease of the lung and its

sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The Act allows the Secretary of Labor, "in accordance with the [Act] . . . and the regulations promulgated" under the Act, to "make payments of benefits in respect of total disability of any miner due to pneumoconiosis." *Id*. § 921(a). A claimant may file for benefits against his employer with a district director of the Office of Workers' Compensation Programs. *See* 20 C.F.R. §§ 725.303(a)(1), 725.451. A party who disagrees with the director's decision may seek review from an administrative law judge. *Id*. § 725.451. And a party who disagrees with the administrative law judge's decision may appeal to the Benefits Review Board. *Id*. § 725.481.

The regulations provide that a "miner" is "any person who . . . has worked in or around a coal mine or coal preparation facility in the extraction, preparation, or transportation of coal, and any person who . . . has worked in coal mine construction or maintenance in or around a coal mine or coal preparation facility." *Id*. § 725.202(a). The regulations also provide that "miners are eligible for benefits if they can establish four things: (1) that they suffer from pneumoconiosis (2) that arose out of their coal mine employment (3) and contributed to (4) their total disability." *Fairfield S. Co. v. Director, OWCP*, 161 F.4th 791, 795 (11th Cir. 2025) (citing 20 C.F.R. § 725.202(d)).

A miner is entitled to a "rebuttable presumption that . . . [he] is totally disabled due to pneumoconiosis" if he "was employed for fifteen years or more in one or more underground coal mines" and

has "a totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4). The regulations implement section 921(c)(4) by incorporating the presumption of disabling pneumoconiosis where "[t]he miner engaged in coal[] mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines." 20 C.F.R. § 718.305(b)(1)(i).

The Act does not define "year" for establishing this presumption. Instead, the Board depends on the definition of "year" in a regulation, *id.* § 725.101(a)(32), adopted by the Department of Labor in 2000. *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79959–60 (Dec. 20, 2000). Section 725.101(a)(32) provides that "[y]*ear* means a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 'working days.'" It also defines a working day as follows:

> A "working day" means any day or part of a day for which a miner received pay for work as a miner, but shall not include any day for which the miner received pay while on an approved absence, such as vacation or sick leave. In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as partial periods totaling one year.

20 C.F.R. § 725.101(a)(32).

The regulation also provides the steps that an adjudicator must follow to calculate a miner's employment based on the working days of a calendar year and the beginning and ending dates of the miner's employment as follows:

> (i) If the evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act. If a miner worked fewer than 125 working days in a year, he or she has worked a fractional year based on the ratio of the actual number of days worked to 125. Proof that the miner worked more than 125 working days in a calendar year or partial periods totaling a year, does not establish more than one year.

> (ii) To the extent the evidence permits, the beginning and ending dates of all periods of coal mine employment must be ascertained. The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony. If the evidence establishes that the miner's employment lasted for a calendar year or partial periods totaling a 365–day period amounting to one year, it must be presumed, in the absence of evidence to the contrary, that the miner spent at least 125 working days in such employment.

*Id*. § 725.101(a)(32)(i)–(ii).

The parties offer competing interpretations of section 725.101(a)(32). Hayes argues that "where [Ermine] worked in a coal mine for at least 125 days in one year," the adjudicator "should . . . consider[] [that year] a 'year' for the purposes of calculating the length of [his] coal mine employment." The Director of the Office of Worker's Compensation Programs responds that the text of section 725.101(a)(32) establishes that "'year' has two necessary components": a "full calendar year of [coal mine] employment" and "125 working days within that year." We adopt Hayes's interpretation.

The text of section 725.101(a)(32)(i) provides that where the "evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act." Its plain text supports Hayes's interpretation that 125 working days in or around coal mines within a 365/366-day period establishes a "year" of coal mine employment. Contrary to the Director's argument, the text does not require that the 125 working days occur "during a calendar year or partial periods totaling one year" *within* a 365 or 366-day employment relationship. That argument reads into section 725.101(a)(32)(i) a new phrase that "calendar year or partial periods totaling one year" cannot bear. *Accord Shepherd*, 915 F.3d at 401 (adopting the same interpretation).

Subsection (ii) confirms this reading. When a claimant proves he was employed in coal mine employment for a calendar year, he is entitled to a rebuttable presumption that he worked 125 days in that year. 20 C.F.R. § 725.101(a)(32)(ii). This presumption does no work if the miner must come forward with evidence establishing both conditions—that the miner worked 125 days within a calendar year and was employed for the entirety of that year.

Contrary to the Director's argument, reading subsection (i) according to its plain text does not render the clause "during a calendar year" surplusage. For example, the clause dictates that a miner who worked 125 days in coal mine employment *over one and a half years* is not necessarily credited with a full year of coal mine employment under subsection (i).

The Director also points to the "opening paragraph" of section 725.101(a)(32) to argue that the third sentence, which provides that when "determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence . . . may be counted as part of the calendar year," 20 C.F.R. § 725.101(a)(32), "implies that a determination *must* be made as to whether the miner was in fact employed for a full calendar year." But the text does not say that the adjudicator "must determin[e] whether a miner was employed for a year"; it instead addresses whether he "worked for one year." *Id.* The sentence informs how an adjudicator should review the evidence when applying section 725.101(a)(32)(ii) to determine whether the miner was employed for 365/366 days.

Cowin & Company maintains that "the use of the 125 day approach" is "discretionary, not mandatory" because "the regulations only require a reasonable method of calculation. But the Board decision it cites does not support its argument. In *Muncy v. Elkay Mining Co.*, the Board stated that "[i]n determining the length of coal mine employment, the administrative law judge may apply any reasonable method of calculation." BRB No. 11-0187, 2011 WL 6140705, at *4 (Nov. 30, 2011). *Muncy* rejected the contention that the judge was "required to use the calculation method set forth" in another provision because it provided "only that an administrative judge '*may*' use" that provision. *Id.* (emphasis added) (citing 20 C.F.R. § 725.101(a)(32)(iii)). The text of subsection (i) does not afford an administrative law judge the same discretion. It states that when the 125-day condition applies, "the miner has worked one year in coal mine employment." 20 C.F.R. § 725.101(a)(32)(i).

The Director next asks us to interpret section 725.101(a)(32) in the light of its preamble in the Federal Register. The Director cites *Blanco v. Samuel*, where we acknowledged that "a regulation's preamble can offer evidence of an agency's contemporaneous understanding of its proposed rules." 91 F.4th 1061, 1076 (11th Cir. 2024) (citation and internal quotation marks omitted). But *Blanco* also reaffirmed that the language "the agency . . . formally use[d] . . . in the regulation itself" always trumps "the language an agency uses in a preamble." *Id.* The "plain meaning" of the regulation has the ultimate "persuasive value." *Id.*

24-11260                Opinion of the Court                13

In any event, the preamble does not clearly support the Director's argument. The Director points to the following language in the preamble as supporting his position:

> The Department believes the partial periods must be aggregated until they amount to one year of coal mine employment comprising a 365-day period. Only then should the factfinder determine whether the miner spent at least 125 working days as a coal miner during the year.

65 Fed. Reg. at 79960. But a few sentences earlier, the following language of the preamble supports Hayes's position: "If the miner actually worked at least 125 days during a calendar year or partial periods of different years totaling a 365-day period, then the miner has worked one year for purposes of the program regulations." *Id.*

Neither do section 725.101(a)(32)'s "predecessor regulations" nor other circuits' interpretations of them move the needle. Those regulations materially differed from section 725.101(a)(32) because they both barred a finding of a "year" when the miner did not work 125 days during that year. *See* 20 C.F.R. § 725.493(b) (1998); 20 C.F.R. § 718.301(a)–(b) (1998). By contrast, section 725.101(a)(32)(i) makes 125 working days an alternative way the adjudicator must find a "year."

The Director finally argues that we should defer to his interpretation of section 725.101(a)(32) if we think the regulation is ambiguous. *See Kisor*, 139 S. Ct. at 2408. We decline to defer because

subsection (i), by its "ordinary, everyday meaning[]," unambiguously provides that if a coal miner worked in coal mine employment for 125 days during a 365/366-day period, he worked one year under the Act. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6, at 69 (2012).

Cowin & Company also argues that Hayes's interpretation of section 725.101(a)(32) would mean that the Secretary violated the Administrative Procedure Act by enacting it. *See* 5 U.S.C. § 706(2)(A) (authorizing courts to "hold unlawful . . . agency action" that is "not in accordance with law"). Yet Cowin & Company does not ask us to invalidate the regulation. It instead asks us to interpret section 725.101(a)(32) to avoid a purported conflict with the Act. But avoidance doctrines "come[] into play only when, after the application of ordinary textual analysis," a provision is "found to be susceptible of more than one construction." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). And, as explained earlier, Hayes's interpretation comports with the plain meaning of the text.

## IV. CONCLUSION

We **GRANT** Hayes's petition for review, **VACATE** the Board's decision, and **REMAND** for further proceedings.